IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

| | |
|---|---|
| VIVIAN THORNTON<br> Plaintiff<br><br>v.<br><br>COMMODORE'S CLUB<br>HOMEOWNERS' ASSOC., INC.,<br> Defendant. | )<br>)<br>)<br>) Case No.:<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, VIVIAN THORNTON, by and through her undersigned counsel, and hereby files this Verified Complaint against the Defendant, COMMODORE'S CLUB HOMEOWNERS' ASSOCIATION, INC., as follows:

### PARTIES, JURISDICTION AND VENUE

1. Vivian Thornton is an 87 year old widow residing at 653 Nautical Way, St. Augustine, St Johns County, Florida 32080.

2. Ms. Thornton owns her home which is located in the Commodores Club subdivision on Anastasia Island, a barrier island that is a part of St. Augustine, Florida.

3. Ms. Thornton originally purchased her home on one of the man-made lakes in the community with her husband, who passed six years ago, and has lived in her home at for 27 years.

4. Ms. Thornton brings this action for damages based upon the Defendant's violations of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et. seq. ("FHA") by failing to reasonably accommodate her disability, failing to allow a reasonable modification and subjecting her to different terms and privileges on account of disability in violation of the FHA.

5. Commodores Club, Homeowners' Association, Inc. ("Association") is a domestic nonprofit corporation with its principal place of business located at 5455 A1A South, St. Augustine, in St. Johns County, Florida.

6. At all times relevant to this complaint, it was the homeowners' association for the Commodores Club community.

7. According to Article XII of the Association's Declaration of Covenants, Conditions, Restrictions and Easements ("CCRs"), the Board of Directors ("Board") is charged with enforcing the provisions of the Association.

8. The Architectural Review Board ("ARB") drafts and implements Architectural Planning Criteria approved by the Board and reports to and serves at the pleasure of the Board.

9. Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), (c), 28 U.S.C. § 1331 and § 1343(a)(3), (4).

10. Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

### *Ms. Thornton is a person with a "handicap" or disability*

11. The FHA defines the term "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h)(1).

12. Ms. Thornton has several medical diagnoses that rise to the level of "handicap" for purposes of the FHA.

13. She has been diagnosed with lumbar spinal stenosis, neurogenic claudication, lumbar radiculopathy all causing severe pain, weakness and cramping in her back and legs.

14. She has also been diagnosed with avascular necrosis of the right hip.

15. She has recently been diagnosed with osteoarthritis in her right knee.

16. All of these impairments result in her being limited in her daily life activities of walking and standing, among others.

17. Ms. Thornton also suffers from chronic generalized anxiety disorder which affects her ability to think.

18. Ms. Thornton was diagnosed with all the impairments set forth in this complaint, other than the osteoarthritis, prior to January 2019.

19. Ms. Thornton had knee replacement surgery on May 25, 2021 and ha even greater difficulty walking and standing as a result.

20. She was diagnosed with osteoarthritis in early 2021.

21. Ms. Thornton's disabilities and resulting impairments are permanent conditions.

### *Denial of requests for a reasonable modification and to provide a reasonable accommodation*

22. On January 18, 2019, the Association's ("ARB") received an application for a small, garden fence from Ms. Thornton.

23. She noted in the application that it was a hardship request and was seeking to install a small garden fence for her dog, Ginger a 19 pound Havanese, as she was unable to walk her due to her recent back surgery and her worsening mobility impairment.

24. According to Ms. Thornton's doctor, Gerald Townsend, Ginger is a necessary companion and also provides service and support.

25. Ms. Thornton's request for an "Architectural Change" was denied in a letter dated March 5, 2019, citing that fences are not permitted anywhere on lakefront lots.

26. Ms. Thornton appealed that decision to the Board who did not overturn the decision and, instead, sent it back to the ARB

27. Not knowing what else to do, Ms. Thornton went to the property manager May Management.

28. May Management told Ms. Thornton that she could install a temporary fence.

29. Ms. Thornton requested approval from the ARB of the temporary fence which was granted on August 21, 2019.

30. When it was granted, Ms. Thornton was instructed that she could only have the fence up until November 19, 2019.

31. On September 24, 2019, Ms. Thornton, through counsel, requested that she be allowed to make a reasonable modification at her expense, to install a small, four foot high, slatted black aluminum, permanent garden fence.

32. In addition, she was asking for a reasonable accommodation to be relieved from the rule, policy, or practice of disallowing fences anywhere on lakefront lots.

33. On November 26, 2019, she provided additional medical documentation in support of her need for a reasonable modification and reasonable accommodation.

34. Specifically, she provided proof that her dog Ginger, who has lived with Ms. Thornton since Ginger was a puppy, is an emotional support animal that also assists her in her daily life.

35. On December 8, 2019, the Board of Directors of the Association responded in writing stating that the "Board of Directors has a legal and fiduciary responsibility to manage the affairs of the community and insure (sic) all covenants and by-laws are adhered to by all of the 265 residents."

36. In a further response, through counsel, the Association stated, "[a]ny fences that are currently located on any lakefront lots were grandfathered

in, but the association has consistently enforced the restriction since that time."

37. There is a rule prohibiting fences anywhere on "any lot that is adjacent to any lake or adjacent to any lot that is adjacent to any lake...", set forth in Article V, Section 4 (h) of the Commodores Club Covenants and Rules.

38. The Commodores Club CCRs prohibiting lakefront lot fences was first recorded on July 18, 1997, with the St Johns County Clerk of Courts.

39. There is also a provision in Article V, Section 4 (u), stating that the ARB has the express authority to waive any of the Architectural Planning Criteria set forth in the Covenants.

40. Upon information and belief there are homes on lakefront lots that were built after July 1997 and, as such, could not have been "grandfathered in" and allowed to have a fence.

41. One such property is 665 Nautical Way, St. Augustine, for which a building permit was first issued on September 15, 1998.

42. Another such property is 516 Peninsula Court, St Augustine, for which a building permit was first issued on March 16, 1998.

43. Another such property is 2293 Commodores Club Boulevard, St Augustine, for which a building permit was first issued on November 18, 1997.

44. Another such property is 1208 Fleet Lane, St Augustine, for which a building permit was first issued on May 17, 2002, and a pool permit was issued on April 22, 2002.

45. Another such property is 1304 Flagship Court, St Augustine, for which a building permit was first issued on June 23, 2003, and a pool permit was issued on April 2. 2003.

46. The Board claims that there is an exception to the lake lot rule "for the purposes of limiting access to a swimming pool. However, according to the documents it provided Ms. Thornton that rule was not enacted until some undisclosed time in 2005 and, if it does exist, it was never recorded with the St. Johns County Clerk of Courts.

47. Rather than granting Ms. Thornton's request for a reasonable modification and reasonable accommodation and allow her to install a small fence, the Association told Ms. Thornton that she should get an electric fence, ground lead or leash.

48. Ms. Thornton's doctor provided another letter, received by the Association on March 17, 2020, supporting the medical necessity of the fence and demonstrating why the other options suggested by the Association are not viable for Ms. Thornton.

49. Dr. Townsend stated that an electric fence or lead are not viable as they create additional anxiety due to her worry that a wild animal might attack Ginger and if the electricity goes down, she might have to chase the dog which she cannot do.

50. On April 8, 2020, the Association, through counsel, told Ms. Thornton that she could apply to the ARB to see if a small pen would be approved.

51. A pen is not a viable option based on Ms. Thornton's limited mobility, because it would be impossible for her to dismantle it in an impending hurricane.

52. She also conveyed that she is anxious that a pen would be a projectile during a hurricane if she were unable to take it down.

53. On May 27, 2020, the Association told Ms. Thornton to submit another application for a permanent fence and requested additional information regarding the fence.

54. That application and supporting documentation was submitted on June 23, 2020.

55. On July 10, 2020, Ms. Thornton was informed that her application was denied and the Association reiterated that Ms. Thornton may apply to have a dog pen.

56. Ms. Thornton again communicated to the Association that a pen was not a reasonable modification in these circumstances.

57. On November 4, 2020, the Association asked for Ginger's veterinarian records to review the age and size of the dog to "evaluate it in relation to the fence she requested."

58. Ms. Thornton provided the age and size of her dog and asked the Association why it needed the veterinarian records.

59. Upon information and belief, no other, non-disabled residents requesting fences have been required to provide the age and size of their animals or their animal's veterinarian records.
60. On November 25, 2020, the Association denied Ms. Thornton's request and reiterated its claim that the other fences on lake lots were "grandfathered in" and that its enforcement has been consistent since the rule was passed.

## CLAIMS

### FIRST CAUSE OF ACTION
### FAILURE TO ALLOW A REASONABLE MODIFICATION, FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF 42 U.S.C. § 3604(f)(3)

61. Defendant, through its actions and the actions of its agents, is liable to the Plaintiff by violating the federal Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 et seq. by allow a reasonable modification or refusing to provide a reasonable accommodation to accommodate Ms. Thornton's disabilities in violation of 42 U.S.C. § 3604(f)(3)(A) and (B).

62. Defendant's unlawful actions were intentional, willful and implemented with callous or reckless disregard for Ms. Thornton's civil rights.

63. As a result of the Defendant's discriminatory conduct, Ms. Thornton suffered injury, harm and damages.

### SECOND CAUSE OF ACTION
### UNEQUAL TERMS, CONDITIONS, OR PRIVILEGES IN VIOLATION OF 42 U.S.C. § 3604(f)(2)

64. Defendant, through its actions and the actions of their agents, are liable to the Plaintiff by violating the federal Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 et seq. by discriminating against her in the terms, conditions in the provision of services or facilities in connection with her home because of a handicap in violation of 42 U.S.C. §3604(f)(2).

65. Defendant's unlawful actions were intentional, willful and implemented with callous or reckless disregard for Ms. Thornton's civil rights.

66. As a result of the Defendants' discriminatory conduct, Ms. Thornton suffered injury, harm and damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court grant her the following relief:

1. Enter a preliminary injunction enjoining Defendant from discriminating and requiring Defendant to:
    a. allow Ms. Thornton to install a small, four-foot, permanent garden fence based on the plan she provided to the Architectural Review Board to be no higher or larger than others that have been allowed by the Commodores Club Homeowners' Association;
    b. be prohibited from removing, destroying, or otherwise interfering with Ms. Thornton's fence, her use of the fence and from assessing any fines or assessments or other fees as a result of its installation; and
    c. be enjoined from otherwise interfering with Ms. Thornton's quiet use and enjoyment and full use of her residence.
2. Further enter a permanent injunction:
    a. enjoining Defendant and its directors, officers, agents, and employees from discriminating on the basis of physical handicap;
    b. directing Defendant to adopt a Reasonable Accommodation/Modification Policy which comports with federal, state and local law;

    c. directing Defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future; and

3. Award compensatory damages to Plaintiff in an amount to be determined by the jury that would fully compensate Plaintiff for injuries caused by the conduct of Defendants as alleged herein;

4. Award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendants for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

5. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

6. Award such additional or alternative relief as may be just, proper and equitable.

## JURY DEMAND

Plaintiff Thornton demands a jury trial on all issues which can be heard by jury.

## VERIFICATION

I, Vivian Thornton, in St Johns County, Florida, declare under penalty of perjury that the foregoing facts set forth in this Complaint is true and correct. Executed on 7/29/2021

_____
Vivian Thornton, Plaintiff

Dated: 8/5/2021

RESPECTFULLY SUBMITTED,

By:   /s/Suzanne Garrow
      Suzanne Garrow
      Fla. Bar No.: 122184
      Jacksonville Area Legal Aid
      126 West Adams Street
      Jacksonville, FL 32202
      (904) 356-8371 Ext. 374
      (904) 405-1976 Fax
      Suzanne.garrow@jaxlegalaid.org